### James Nall and another v. William L. Granger.

Where persons have in good faith acquired a lien upon property, prior to a levy
upon it, there is no such privity between them and the ,execution debtor, at
the time of the levy, as can in any respect make his rights the measure of
theirs, as between them and a purchaser under the execution.

As between the purchaser at a sheriff's sale, and one who claims the goods as the
mortgagee of the judgment debtor, the sheriff's return on the execution is not
conclusive as to the time of the levy, but such mortgagee has a right to show
that the levy was not made till after the time stated in the return, and after
his right, as mortgagee, accrued.

Such evidence would show that there was no privity between the mortgagee and
the judgment debtor, and that the sheriff had no right to make a return affect-
ing the mortgagee or the property.

And where a purchaser, knowing of a mortgage on the property, colludes with the
sheriff, and procures from him a false return of a levy before the giving of the
mortgage, and purchases the property on condition that such false return shall
be made; *Held,* in a suit between the mortgagee and the purchaser, that this
fraudulent collusion may be shown, and any effect of the return on the rights
of the mortgagee defeated on the ground of this fraud.

*Heard July 7th. Decided July 9th.*

Error to Eaton Circuit.

Nall & Duncklee sued Granger, in replevin, for certain oxen and a horse, which they claimed under a chattel mortgage given by M. H. Crafts, September 1st, 1857. Defendant claimed the property as purchaser at a sale of the same, made November 23d, 1857, by the sheriff of Eaton county, by virtue of an execution against Crafts.

On the trial, after plaintiffs had proved their mortgage, defendant called George N. Potter, who testified that he was sheriff of Eaton county from January 1st to and including November 23d, 1857. He then produced the execution by virtue of which the sale in controversy was made, and read the following endorsements thereon:

"State of Michigan, County of Eaton, ss: By virtue and with the consent of Myron H. Crafts, I have, this 23d day of November, 1857, sold his interest in the goods and chattels levied upon by virtue of the within writ, for the sum of one hundred dollars.

GEO. N. POTTER, Sheriff."

"State of Michigan, County of Eaton, ss: By virtue of the within writ, I have, this 26th day of August, 1857, levied upon the following goods and chattels to wit: one horse, harness and buggy, two yoke of oxen, one two year old steer, one yearling steer, one yearling heifer, and eight sheep.          GEO. N. POTTER, Sheriff."

On his cross-examination, said Potter testified that he could not tell exactly when he signed the levy; that he signed it after the time of the levy, but before advertising the property: that the levy was on the execution at the time of making the sale.

Plaintiffs' counsel then proposed the following question to the witness: Did you see the property at the time of making the levy, and if so, where was it? Which question was objected to by defendant on the ground that it tends to impeach the levy; and the objection was sustained by the court.

After defendant had rested, plaintiffs called Crafts, who testified that before November 10th, 1857, the property in controversy had run at large in the woods. Plaintiffs' counsel then asked him the following question: Had you any knowledge of the levy before November 10th, 1857? This question being objected to, counsel stated their claim to be:

*First:* If in fact a levy was made on the 26th of August, and no notice given or possession taken of the property until the tenth day of November following, and in the meantime, without knowledge or collusion, the plaintiffs received from the witness the property, then the defendant could have acquired nothing by his purchase.

*Second:* Plaintiffs propose to show that no levy had in fact been made prior to November 10th, 1857; that the defendant knew this fact, and knew of this mortgage, and by collusion with the sheriff at the time of the sale, was to procure from the sheriff a return that he had made such a levy before the execution of the mortgage.

The court decided that the evidence offered was not admissible to contradict the return of the sheriff of the fact of his levy upon the property, and the time of making it.

The plaintiffs' counsel then asked the witness the following question: Have you had conversation with the defendant in relation to the subject matter of this controversy? If so, what did he state as to his knowledge of a levy upon the property? This question being objected to, the counsel stated that he proposed to show by this witness, and others whom he named, that the defendant had said, since the commencement of this suit, that he knew the sheriff had not made a levy upon the property purchased at the sheriff's sale, before the execution and delivery of the chattel mortgage to plaintiffs, but that the sheriff then agreed to endorse his levy on said execution as of a day prior to the execution of said mortgage, which was a condition upon which he purchased the property. The court sustained the objection, and ruled out the evidence.

NALL *v.* GRANGER.

Judgment having passed for defendant in the court below, plaintiffs filed exceptions, and brought error.

*Shaw & Bronson*, for plaintiffs in error:

The statute does not require the sheriff to endorse the date of his levy; and the return, therefore, is not evidence of the time of the levy: — 5 *Ired.* 198; 11 *Fost.* 16; 2 *N. H.* 391.

In order to constitute a valid levy on goods, they must be within view of the officer at the time, and subject to his immediate disposition and control; especially as against one who subsequently purchases them from the debtor without notice of the levy: — 2 *Hill*, 266; 5 *Denio*, 198; 3 *Wend.* 445; 23 *Wend.* 490; 14 *Wend.* 124; *Watson on Sheriffs*, 172, 191; *Crocker on Sheriffs*, 28, 30.

The return of an officer, whether on mesne or final process, is prima facie evidence only, and liable to be disproved; and seldom conclusive as to third persons: — 5 *Ired.* 198; 6 *Conn.* 334; 19 *Vt.* 80.

If the defendant knew of the fact of the plaintiffs' rights to the property, under the chattel mortgage, and was guilty of collusion with the officer, he could acquire no rights by his purchase: — 4 *Blackf.* 230; 15 *Mass.* 230; 2 *N. H.* 81; 1 *N. H.* 68; 1 *Minn.* 434; 25 *Pa. St.* 413.

*Blair & Gibson*, for defendant in error:

A legal and sufficient return by an officer can not be contradicted, except in a suit against the officer himself: 17 *Mass.* 600, *and cases cited;* 8 *Greenl.* 272; *Ibid.* 211; 8 *Mass.* 334; 11 *Fost.* 99; 35 *N. H.* 421; *Ibid.* 9. It is not traversable, and the court will not permit it to be collaterally attacked, even if the officer is shown to have been guilty of fraud and collusion: — 5 *Cal.* 53; 12 *Ohio*, 235; 3 *Lit.* 129, 132.

Even when a party has been guilty of some trick or device designed to get the property at less than its value,

it will not be void unless it be shown that he actually succeeded in getting it for less than it would bring at a fair sale:— 25 *Pa. St.* 413 ; 28 *Pa. St.* 433. The only way to remedy the collusion is to move the court to set aside the sale; it can not be attacked collaterally.

That the Legislature intended that the fraud of the officer should be no exception to the general rule, is seen in the severe penalty provided in that case : — *Comp. L.* § 4492. But the attempt here is to *get rid of the levy*. To allow this, would be a most dangerous practice. It is not pretended that there was any thing unfair in the sale. If it would have been valid as to any other bidder, why not as to Granger, the highest, even though there was collusion?

CHRISTIANCY J.:

Whether, as a general rule, the return of a sheriff upon an execution is conclusive upon the defendant in the execution, and those claiming by privity from him, or only prima facie evidence, and liable to be impeached for fraud of the sheriff, is a question not necessary to the decision of this case, and upon which, therefore, we express no opinion.

To place the plaintiffs in this case in privity with the execution debtor, within the meaning and spirit of the rule which would bind them to the same extent as he would be bound, they must have acquired their right to the property in question after the execution had become a lien upon the property: in other words, after a levy of the execution upon it, as the property of the execution debtor. If the plaintiffs' rights *to the* property had become vested in good faith prior to the levy, no such privity existed between them and the execution debtor at the time of the subsequent levy, as could, in any respect, make his rights the measure of theirs, as between them and a purchaser under the execution. Because, if

the levy was made after the rights of the plaintiffs had in good faith attached to the property, the defendant in the execution, the mortgagor, was not himself bound or affected by the levy, and had no rights in the property to be affected by it: his rights in, and control over, the property had been transferred to, and vested in, the plaintiffs, at a time when he had a perfect right so to transfer it, and when no lien upon it existed under the execution; and none could thereafter be acquired as against the plaintiffs.

If no such privity existed between the plaintiffs and their mortgagor at the time the levy was made, the return could not affect the rights of the plaintiffs by reason of any effect it might be supposed to have upon the execution debtor; and whether such privity did or did not exist at the time of the levy, or afterwards, must depend entirely upon the question, whether the levy had in fact been made prior to the time when the plaintiffs' rights attached under the mortgage. To make the sheriff's return, therefore, conclusive evidence against these plaintiffs of the *time* when the levy was made, is to use the return first to establish conclusively the fact of such privity, without which the plaintiffs could not be affected by the return, and then, in consequence of the privity thus established, to bind the plaintiffs conclusively as to the date of the levy shown by the return. It is manifest that this is reasoning in a circle. The fact of such privity is made the premises for this conclusion, and the conclusion itself is the only proof of the premises. The whole process by which the conclusion is reached takes for granted — nay, assumes as conclusively established — the very fact to be proved, and without proof of which the result could not be reached. Thus, the execution gave no right to the sheriff to take any property of the plaintiffs, but only that of the execution debtor. To give the sheriff any right to make a return which could affect their pro-

perty, or the rights of the plaintiffs, the execution must have been levied upon the property before the plaintiffs acquired it from the execution debtor. If the levy had not been previously made, the sheriff could have no authority to make any return which could affect their rights in it : and to make his return conclusive evidence of the very fact without which he had no power to make the return, or to state officially the fact, is a process which ends where it begins; by assuming conclusively, independent of the return, and yet as a prerequisite to it, the very fact sought to be proved by it, and without which it can have no validity.

The purpose of a sheriff's return to an execution is not to decide upon rights of property between the execution debtor and third persons. But the theory which would make the sheriff's return conclusive upon the plaintiffs in the present case, would give him the power to determine this question of property conclusively, and without appeal. It would even give him the power, by a stroke of the pen, to divest property rightfully vested in third persons, to transfer it to the execution debtor, and to satisfy his execution from it, without any trial of the right, and by an arbitrary process not subject to review.

The evidence offered by the plaintiffs, had it come up to the offer, would have shown such an abuse of power in the present case : it would have shown that no levy had in fact been made till long after the rights of the plaintiffs had accrued: that there was therefore no privity existing between the debtor and the plaintiffs, and that the sheriff had no authority to make a return affecting them or the property: that the return was purposely dated back to a period anterior to the plaintiffs' mortgage, for the very purpose of defrauding them by subjecting the property to the execution. The evidence was therefore, we think, clearly admissible.

But there is still another ground upon which the judg-

ment should be reversed. The plaintiffs offered further to show that the defendant himself (who claimed the property by purchase at the sheriff's sale) knew that no levy had been made prior to the tenth of November; long after the mortgage to plaintiffs had been executed and filed: that he knew of the mortgage, and by collusion at the time of the sale, with the sheriff, was to procure from him a return that he had made such levy before the execution of the mortgage: that the defendant had admitted substantially these facts, and also admitted that the sheriff had agreed to endorse his levy on the execution as of a day prior to the execution of the mortgage, and that this was a condition upon which he purchased the property.

These facts, if proved, to say nothing of the fraudulent abuse of official power by the sheriff in falsifying the record of his official acts, would have shown that the defendant himself, with full knowledge of the plaintiffs' rights, had deliberately entered into an unlawful and corrupt combination for the purpose of obtaining the property from the plaintiffs by the grossest fraud and falsehood, and that he stood before the court in the attitude of a swindler, having no claim which did not spring from his own deliberate fraud, and asking the court to aid him in obtaining the reward of his iniquity, by giving effect to his own fraud against innocent parties. Courts of justice can not be made the instruments for carrying into effect such schemes of fraud. If parties, in a case like the present, are ever precluded from impeaching a sheriff's return on the ground of fraud, it is only to protect innocent parties whose rights depend upon his official acts; not to protect a fraudulent purchaser from the consequences of his own fraud. We think all the evidence offered by the plaintiffs in this case should have been admitted. The judgment must be reversed, and a new trial granted.

The other Justices concurred.